CARL VAN WALDERVEEN et. al., Landlords, *v.* ROBERT T. MARTIN, Tenant.

City Court of Albany, March 18, 1949.

*John E. Knauf* for landlords.

*Kenneth T. McKay* for tenant.

HERZOG, J. The facts in this proceeding have been stipulated. It appears that the landlords rented the premises in June, 1943, to one Harlan Weaver for $55 per month, without any written lease. In 1948, Weaver was required to be absent from the premises for several months while traveling for his employer. He presented a written lease to the landlords, requesting authorization to sublet the premises, but the landlords refused to execute this instrument. Thereafter, Weaver left Albany for several months and entered into an oral agreement with Robert T. Martin to sublet the premises, furnished, at a rental of $125 per month. There is some dispute as to whether or not the landlords knew the premises had been sublet. I think this makes little difference in the determination of this proceeding. However, Weaver received a notice, dated September 23, 1948, notifying him that his tenancy was terminated January 31, 1949. Thereafter, on February 15th, this proceeding was commenced for the removal of Martin on the grounds that he was a squatter, under subdivision 4 of section 1411 of the Civil Practice Act.

In my opinion, it is possible to reach the solution of this problem as a mathematical progression. Therefore, I am almost tempted to write " Q.E.D." at the conclusion of this opinion. However, conflicting opinions prevent me from doing this. It is possible to find reported decisions in which it is held that the rent statutes do not apply to subtenants. In fact, it is possible to find conflicting opinions upon almost all problems arising under these statutes.

I believe there are two reasons for this. The first of these is that there are many provisions of the Housing and Rent Act of 1947, as amended (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*), and the various commercial rent laws of New York, which are open to interpretation. I call attention to the following phrases excerpted from the emergency rent act (Rent Act of 1947, § 209, as amd.; U. S. Code, tit. 50, Appendix, § 1899, as amd.): " sixty

days after written notice ''; '' good faith ''; '' members of his immediate family '' etc.

The second reason is that courts have felt free to interpret the language of these enactments according to their own concepts of social justice and of the moral righteousness of each problem. I am strongly opposed to such interpretation.

Judicial interpretation of the legislative enactments has become a fixed province of our courts. There are, of course, two schools of thought — whether such construction should be strict or loose. I recognize this well-accepted theory of jurisprudence. However, I fail to see how a court has a legal right to interpret language which leaves no room for interpretation. To do otherwise is to bring down upon the courts the well-deserved condemnation of '' judicial legislation ''. Therefore, when the language of the statutes is clear, it must be so interpreted whether or not the court agrees with the social injustice or justice of the enactment.

I say this with a deep feeling and appreciation of the problems involved in eviction proceedings. As Judges of a court of lower jurisdiction, living in a community where the housing situation is acute, it is necessary for us to hear hundreds of these cases during the course of a year and to be in constant daily contact with the problems presented. These problems are a matter of life and death to tenants and landlords and they are entitled to a definite declaration of the law.

Few of these cases reach appellate courts for the very obvious reason that too often neither the landlord nor the tenant has the financial means to appeal. The penalties imposed upon the tenant to appeal under our Civil Practice Act are too great to risk. Therefore, lower courts must sustain the burden of interpreting the legislative enactments, knowing that in many cases there will be few appellate decisions which will be helpful. This also places upon the appellate court the burden of interpreting the legislation, not from its concept of social justice, but in accordance with the language as written by the legislative bodies. To do otherwise is to add to the conflict of opinion and to cause great social unrest. If a lower court can know that appellate courts will so interpret the language, it will help to alleviate the present situation with its multitude of conflicting opinions, and with each court feeling free to interpret according to its own idea. It is for this reason that I have stated the above at some length and because I feel that it is vitally essential that lower courts understand that they must read the legislation

as it is written and that there is no room for interpretation unless the language is not clear. Although we appreciate the benefit of appellate courts' opinions upon provisions of enactments which demand interpretation, we also feel that they, too, should not interpret unless the legislative bodies have not made themselves clear. With these rules in mind, I come to the decision of this case.

The tenant Weaver was a statutory tenant. (*Whitmarsh* v. *Farnell*, 298 N. Y. 336, 343.) I think that such a tenancy is a creation of judicial legislation stemming from *Stern* v. *Equitable Trust Co.* (238 N. Y. 267), and although, with all due respect to Judge POUND, I cannot accept his reasoning in his dictum in that case, I must accept it as binding authority.

When Weaver held over, he held over under the terms of his original lease. (*Glauberman* v. *University Place Apts.*, 188 Misc. 277, 278, affd. 272 App. Div. 758, motion for leave to appeal denied 272 App. Div. 815, motion for leave to appeal dismissed 297 N. Y. 587.) '' The plaintiff, because of the provisions of the statutes and regulations, became a statutory tenant as to term and rental obligation, but subject to the rights and obligations of the lease not otherwise affected. The rights and obligations of the parties under the lease are projected into and become part of the statutory tenancy, except where they are plainly inconsistent with the act. (*130 West 57th Corp.* v. *Hyman*, 188 Misc. 92.)'' It has been conclusively established that the only covenants implied in an oral lease for a term of years are '' on the part of the landlord, of title and right to give the lease, and for quiet enjoyment, and, on the part of the tenant, to pay the rent reserved.'' (1 New York Law of Landlord and Tenant, § 380, p. 794.) It is further held: '' As in case of assignments, unless restricted by the terms of the lease, the right to sublet is, as a general rule, incident to all leases for a term of years, for life or in fee.'' These rules are supported by authority. (*Eten* v. *Luyster*, 60 N. Y. 252, 257–258; *Syracuse Sav. Bank* v. *D'Elia*, 185 Misc. 928; *Frazier* v. *Cropsey*, 124 Misc. 367; *Galligan & Co.* v. *P. S. M., Inc.*, 116 Misc. 754.)

Under these rules it follows that the statutory tenant holds over under the original terms of his oral lease; that an oral lease contains no covenants against subletting, and so the tenant has a right to sublet the premises. Therefore, anyone entering the premises with authority from the tenant, as a subtenant, cannot be a squatter for he enters with legal authority. The definition of a squatter is contained in *Williams* v. *Alt* (226

N. Y. 283, 290). '' A squatter is one who settles on the lands of another without any legal authority ''.

It should be pointed out also that section 1 of the rent regulations, under the Housing and Rent Act of 1947, provides that, '' ' Tenant ' includes a subtenant ''.

Several cases have been cited by the landlord which, he claims, authorize a removal. A careful study of these shows that they were decided under prior regulations which authorized the removal of a tenant if he were not in occupancy upon the termination of his tenancy. This regulation was not carried into the present rent act and under ordinary rules of interpretation it should be determined that this was done intentionally and to show conclusively that the landlord cannot remove subtenants as squatters. There may be, perhaps, some possibility of removal here upon the grounds that there has been a violation of tenancy in view of the fact that the landlord refused to sign a new lease containing a subleasing provision. However, this proceeding is brought upon the grounds that Martin is a squatter.

I cannot conclude this decision without paying consideration to *Birdie Management Corp.* v. *Dunton* (60 N. Y. S. 2d 673) and to my own decision in *Campbell* v. *Roth* (March 11, 1949). However, those cases were decided specifically upon the grounds that there was no subtenancy but there was merely a subterfuge practiced by the tenant on the landlord and the occupancy was without any authorization of one entitled to grant it. In the instant case, the tenant left with the intention of returning. There was no attempt to practice any subterfuge upon the landlords and I feel that the above cases cited are not in point.

Motion of the tenant to dismiss the proceeding because of lack of jurisdiction is granted.